# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RUFUS WEST,

       Plaintiff,

       v.                                    Case No. 06-C-068

JOHN KUSSMAUL, GERALD BERGE,
PETER HUIBREGSTE, EGGERS, JOHNSON,
SGT. PATTON, MATTHEW FRANK, TIM HAINES,
SGT. HOTTENSTEIN, BRAD HOMPE, LAXTON,
MICKELSON, SCHISSEL, STEVE CASPERSON,
KEVIN POTTER, GARY BOUGHTON,
MICHAEL SNOTGRASS, C.O. JERGENS, HEDEMAN,
JOANNE GOVIER, ERIC HUNT, DR. ESCANDELL,
NICHOLAS FURER, and JOHN SHARPE,

       Defendants.

## ORDER

       Rufus West, a state prisoner, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 concerning events that occurred while he was incarcerated at the Wisconsin Secure Program Facility. On February 13, 2006, West was granted leave to proceed *in forma pauperis*, and his complaint was dismissed for failing to set forth a short and plain statement showing that he is entitled to relief. Subsequently, on March 2, 2006, West filed an amended complaint in an attempt to cure the deficiencies in his first pleading. Accordingly, the amended complaint is ready for screening pursuant to 28 U.S.C. § 1915A.

       The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally

"frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

2

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley*, 355 U.S. at 47); *see also Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for pro se prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Thomson*, 362 F.3d at 970.

## COMPLAINT ALLEGATIONS[1]

West is incarcerated at the Wisconsin Secure Program Facility (WSPF). (Complaint [Compl.] at 1). The defendants are all employed by the Wisconsin Department of Corrections (DOC). *Id*. Defendants Frank, Potter and Casperson work in Madison. *Id*. Defendant Hompe is employed at Racine Correctional Institution (RCI) in Sturtevant. *Id*. The remaining defendants are employed at WSPF in Boscobel. *Id*.

The complaint states that West regularly laid on his cell floor "[i]n order to escape the well known excessive heat (in the summer time)" and freezing cold in winter. *Id.* at 3. Apparently, West attempted to improve his living conditions by"litigat[ing]" his concerns to defendants Berge and Huibregste, who "refused to correct said temperatures." *Id*. Thereafter, West was subjected to the following retaliatory acts. *Id*. at 2.

---

[1]The complaint is verified pursuant to 28 U.S.C. § 1746.

First, in May 2002, defendants Berge, Boughton, Huibregste, Hompe, Frank and Sharpe "illegally confiscated [West's] mattress & replaced it -w- a seg mat (1/4 inch thick, hard unbendable rubber mat) -w- out due process, resulting in [his] not having a mattress from June of 2002 to 4-18-03." *Id*. at 3. As a result, West experienced "exacerbated pains in [his] legs, hips, back, & neck & loss of proper sleep." *Id*.

Then, defendants "Mickelson, Johnson, Laxton, Snotgrass, Hottenstein, Kussmaul and Haines illegally & retaliated against [West] because of [his] litigations against them by electronically flushing [his] toilet for 1 hour incessantly." *Id*. In addition, defendants Hottenstein, Mickelson and Johnson turned West's "bright cell light on from outside [his] cell so that [he] couldn't turn it off." *Id*. at 4. West avers that Huibregste, Haines, Boughton and Potter "knew about said defendants turning my light on & refusing to turn it off but repudiated my written grievances to them." *Id*. Also, defendants Mickelson, Johnson, Laxton, Snotgrass, McDaniel,[2] Jergens, Furer, Hedeman, Hottenstein, Schissel, Govier, Kussmaul and Hunt, with Haines' approval,"retaliated against [West] by writing 'warnings' in [his] Behavior Log from 5-29-03 to 12-2-03 for lying on the floor." *Id*.

Next, from June 9, 2003 to January 7, 2004, defendants Mickelson, Johnson, Hunt and Schissel retaliated against West by issuing him the following conduct reports:

> June 9, 2003: West was convicted of CR #1412494 for laying on the floor and was punished with 61 days loss of electronics.

> June 18, 2003: Defendant Mickelson issued West CR #1412497 for laying on the floor and West was punished with 61 days loss of electronics.

---

[2]McDaniel is not a named defendant in this action. Accordingly, West may not proceed on any claims against him.

July 3, 2003: Defendant Mickelson issued West CR #1411965 for laying on the floor and West was punished with 61 days loss of canteen.

July 7, 2003: Defendant Mickelson issued West CR #1411960 for laying on the floor and West was punished with 30 days loss of recreation.

July 3, 2003: Defendant Mickelson issued West CR #1411966 for laying on the floor and West was punished with a 10 day extension of his mandatory release date.

July 21, 2003: Defendant Johnson issued West CR #1411979 for laying on the floor and West was punished with 60 days loss of recreation.

July 30, 2003: Defendant Johnson issued West CR # 1411996 for laying on the floor and West was punished with 180 days program segregation.

August 8, 2003: Defendant Mickelson issued West CR #1411802 for laying on the floor and West was punished with 180 days program segregation and 16 days room confinement.

October 3, 2003: Defendant Mickelson issued West CR #1411865 for laying on the floor and West was punished with 120 days program segregation and 30 days loss of phone.

October 3, 2003: Defendant Johnson issued West CR #1411874 for laying on the floor and West was punished with 90 days program segregation and 30 days room confinement with loss of electronics.

October 23, 2003: Defendant Mickelson fabricated CR # 1411879 and West was punished with 150 days program segregation and 30 days loss of phone.

November 5, 2003: Defendant Johnson fabricated CR #1411881 and West was punished with 30 days room confinement.

November 5, 2003: Defendant Laxton issued West CR #1411883 for laying on the floor and West was punished with 90 days loss of electronics.

November 5, 2003: Defendant Hunt fabricated CR # 1564983 and West was punished with 60 days loss of recreation.

January 7, 2004: Defendant Schissel fabricated CR #1564992 and West was punished with 180 days program segregation.

January 7, 2004: Defendant Mickelson fabricated CR # 1564988 and West was punished with 90 days loss of exercise.

5

*Id*. at 5-6. Furthermore, the complaint states that the conduct reports were used against West "as evidence to deny [him] parole on January 10, 2006." *Id*. at 6.

Finally, West alleges that defendants Haines, Berge, Escandell, Huibregste, Boughton and Casperson "illegally" sentenced him to Behavior Management Program (BMP) "on 10-21-03 -w-out due process." *Id*. Before he was assigned to BMP, defendants Haines, Berge, Escandell, Huibregste and Boughton and Eggers, Hunt and Patton took West to "a strip cage, stip searching [him] keeping all of [his] clothes (except [his] drawers) -w- out due process & then parading [him] unclothed in shackles & cuffed behind [his] back to [his] cell past several jeering prisoners." *Id*. at 7. While in BMP, defendants Haines, Berge, Escandell, Huibregste and Boughton deprived West of "canteen, telephone, visits, mail, all hygiene supplies, showers, cell-cleaning supplies, all of [his] clothes (except drawers), all reading & writing materials, pillow, bedding, & toilet paper incessantly from 10-21-03 to 11-5-03." *Id*.

For relief, West requests "replevin relief from Berge, Boughton, Huibregtse, Hompe, Frank, Sharpe, Haines, Escandell and Casperson in the amount of $30,000.00 per deprivation." *Id*. In addition, he asks for the following relief from each defendant: 1) $1,500,000.00 in punitive damages; 2) $1,500,000 in compensatory damages; 3) $90,000,000 in emotional damages; 4) $1,500,000 in "non-economical damages;" and 5) $1,000,000 in treble damages. *Id*.

## DUE PROCESS

West contends that the defendants violated his due process rights by taking his mattress and punishing him with: 1) segregation; 2) loss of electronics; 3) loss of canteen use; 4) loss of telephone privileges; 5) room confinement; 6) loss of recreation; 7) extension of his mandatory release date; and 8) denial of parole. To establish a procedural due process violation, a prisoner

6

must demonstrate that the state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). A liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484.

### Segregation

West submits that his due process rights were violated when he was sentenced to segregation on July 30, August 8, and October 3, 2003, and January 7, 2004. However, a prison inmate does not have a protected liberty interest in not being placed in segregation as long as such confinement does not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *Sandin,* 515 U.S. at 486; *Hoskins v. Lenear,* 395 F.3d 372, 395 (7th Cir. 2005) ("[t]o the extent that Hoskins claims he was denied due process. . .we agree with the district court that his complaint fails to state a claim. . . .The punishments Hoskins suffered because of his disciplinary conviction [demotion in status, segregation, and transfer] raise no due process concerns."); *Thomas v. Ramos*, 130 F.3d 754, 760-62 (7th Cir. 1998) (prison inmate's 70-day confinement in disciplinary segregation was not "atypical and significant" deprivation of prisoner's liberty and thus did not implicate liberty interest under due process clause). Accordingly, he has failed to allege facts sufficient to state a due process claim.

### Loss of Canteen and Telephone Privileges

West alleges that defendants Mickelson, Johnson and Laxton violated his due process rights when he was punished with a loss of canteen and telephone privileges. Generally, depriving a prisoner of mere privileges does not require the use of procedures that comply with due process. *Wolff v. McDonnell*, 418 U.S. 539, 571 (1974). Furthermore, the Seventh Circuit has held that an

7

inmate's loss of commissary privileges does not trigger a due process violation, *Thomas,* 130 F.3d at 761 n. 8, and loss of phone privileges implicates no liberty interest. *Hadley v. Defers*, 70 F.3d 117 (7th Cir. 1995). Thus, West has failed to state a due process claim.

**Room Confinement**

West avers that defendants Johnson and Mickelson violated his due process rights because he was sentenced to room confinement. As noted, a liberty interest exists when prison officials restrain the freedom of inmates in a manner that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. However, West has given no indication how confinement to his room rises to the atypical punishment standard contemplated by *Sandin*. Therefore, the complaint is insufficient to state a due process claim.

**Loss of Recreation**

Next, West maintains that defendants Johnson, Hunt and Mickelson violated his due process rights when he was denied recreation. However, the Seventh Circuit has held that inmates have no protected liberty interest in out-of-cell recreation. *Buchanan v. Duckworth*, 1992 U.S. App. LEXIS 5380 (7th Cir. Mar. 19, 1992); *see also Wrinkles v. Davis*, 311 F. Supp. 2d 735 (N.D. Ind. 2004)(a 79 day loss of recreation did not violate due process). In light of the foregoing, West has failed to state a due process claim.

**Extension of Mandatory Release**

Next, West claims that defendant Mickelson retaliated against West by extending his mandatory release date. Wisconsin's mandatory release statute creates a liberty interest protected by the due process clause. *See Felce v. Fiedler*, 974 F.2d 1484, 1491-92 (7th Cir. 1992); Wis. Stat. § 302.11 ("each inmate is entitled to mandatory release on parole. . .at two thirds of the sentence."). However, extension of an inmate's mandatory release date does not concern a condition of

confinement, but the fact or duration of confinement. It is well established that the sole federal

remedy for one who challenges the fact or duration of his confinement by the state and seeks a

determination that he is entitled to immediate or speedier release is a writ of habeas corpus. *Preiser*

*v. Rodriguez*, 411 U.S. 475, 500 (1973). Accordingly, this claim will be dismissed as well.

**Denial of Parole**

West asserts that the numerous conduct reports he received between June 9, 2003 and

January 7, 2004 were used to deny him parole. While states may create liberty interests in being

granted parole, Wisconsin has not done so. *See Felce*, 974 F.2d at 1490. In contrast to the

mandatory release statute discussed above, Wisconsin's parole statute is written in non-mandatory

terms that give the parole commission complete discretion to grant or deny parole. *See* Wis. Stat.

§ 304.06(1)(b)("the parole commission *may* parole an inmate...when he or she has served 24% of

the sentence imposed.")(emphasis added). Moreover, denial of parole, like an extension of an

inmate's mandatory release date, concerns the fact or duration of confinement and must therefore

be challenged in an action brought under 28 U.S.C. § 2254, not 42 U.S.C. § 1983. Accordingly,

West may not proceed on this claim.

**Mattress**

West contends that defendants Berge, Boughton, Huibregste, Hompe, Frank and Sharpe

violated his due process rights when they seized his mattress. As noted, the Due Process clause

prohibits punishment that "imposes atypical and significant hardship on the inmate in relation to

the ordinary incidents of prison life." *Sandin,* 515 U.S. at 484. Indeed, it is well established that

"[i]nmates cannot expect the amenities, conveniences and services of a good hotel." *Harris v.*

*Fleming*, 839 F.2d 1232, 1235-36 (7th Cir. 1988). In this case, there is no indication that

defendants' seizure of his mattress caused West to experience unusually harsh prison conditions.

9

Furthermore, West concedes that his mattress was replaced with a seg. mat. In light of the foregoing, West has failed to allege facts sufficient to state a due process claim.[3]

## RETALIATION

West avers that the defendants retaliated against him because he complained about the extreme temperatures in his cell. Prison officials cannot hinder prisoners from this access or retaliate against prisoners who attempt to exercise their constitutional rights. *Williams v. Lane*, 851 F.2d 867, 878 (7th Cir. 1988). Additionally, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would otherwise be permissible. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citing *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988)) ("[P]ermissible conduct can become impermissible when done for retaliatory reasons.").

A plaintiff must plead three elements in order to state a claim for retaliation: he must "specif[y] a retaliatory action;" he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." *Hoskins v. Lenear*, 395 F.3d 372, 275 (7th Cir. 2005). West attempts to meet that standard, but has instead pleaded himself out of court by alleging facts which clearly demonstrate that the actions complained of were not in retaliation for his constitutionally protected conduct but rather for his violation of prison rules, specifically, his refusal to sleep in his bed. West acknowledges that he continued to violate this rule despite numerous efforts undertaken by guards to induce his compliance. His complaint describes these efforts as including the flushing of his toilet, turning on his lights,

---

[3]Incidentally, it appears that prison inmates do not have a protected liberty interest in their prison bedding. *See Stephens v. Cottey*, 2005 U.S. App. LEXIS 17639 (7th Cir. Aug. 11, 2005).

replacing his mattress with a "seg mat", issuing conduct reports, and taking away privileges. None of these actions are *per se* unconstitutional and each can be legitimately used by prison guards, as they apparently were here, to induce a prisoner to comply with prison rules. A prisoner cannot transform such actions into a federal lawsuit simply by adding the conclusory allegation that, in taking such actions, the guards were also retaliating against him for other, constitutionally protected conduct. Even for non-prisoners alleging retaliatory prosecution, absence of probable cause for the crime charged must be pleaded in order to state a claim. *Hartman v. Moore*, 126 S.Ct. 1695, 1707 (2006). It is difficult to see why any lesser burden should be expected of prisoners suing their guards. Here, there is not only probable cause to believe West engaged in the very behavior for which he was punished, he admits as much. Under these circumstances, the court can discern no valid retaliation claim. Accordingly, West's claims of retaliation against all defendants are dismissed.

## CONDITIONS OF CONFINEMENT

West claims that he was forced to sleep on the floor as a result of the extreme temperatures in his cell, that he was denied the use of a mattress, and that he was left in BMP without hygiene supplies, clothing and bedding for approximately two weeks. The Eighth Amendment proscribes cruel and unusual punishment in cases of official conduct which is not part of the formal penalty for a crime if a plaintiff demonstrates: (1) a "sufficiently serious" deprivation and, (2) that officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). Mechanical rules are not to be employed in determining whether an alleged deprivation violates the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981). However, "only those

deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to

form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452

U.S. at 347).

### Extreme Temperatures

West submits that defendants Haines, Berge, Escandell,Huibregste, and Boughton placed

him in BMP where he was kept in a "freezing, ice-cold cell 24 hours a day with no adequate means

for me to protect myself from said freezing temperatures." (Compl. ¶ 8.) His claim is less than

clear, however, since his complaint lacks even a rough estimate of the temperature extremes to

which he claims he was subjected. The Eighth Amendment's prohibition against cruel and unusual

punishment imposes upon prison officials the duty to "provide humane conditions of confinement"

for prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment also imposes

a duty on prison authorities to provide adequate shelter, although conditions may be harsh and

uncomfortable. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). This includes a right to

protection from extreme cold and heat. *Farmer,* 511 U.S. at 833-34. Given the liberal pleading

rules that govern the court's determination at this stage, the court concludes that West has stated an

Eighth Amendment claim against these defendants. Accordingly, West will be allowed to proceed

on this claim.

### Mattress

West maintains that the defendants' seizure of his mattress constitutes cruel and unusual

punishment. Prison conditions cannot rise to the level of cruel and unusual punishment unless the

conditions produce "the deprivation of a single, identifiable human need such as food, warmth, or

exercise." *Wilson*, 501 U.S. at 304. "To be cruel and unusual punishment, conduct that does not

12

purport to be punishment at all, must involve more than ordinary lack of due care for the prisoner's interest or safety . . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." *Id.* at 299 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). In this case, West concedes that his mattress was replaced with a seg. mat. However, the "unpleasantness" of the seg. mat in comparison to West's mattress does not amount to an Eighth Amendment claim. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988). Moreover, it is doubtful that West could prove that the defendants acted with more than an ordinary lack of care in light of the fact that they replaced his confiscated mattress. *See Wilson*, 501 U.S. at 299. In light of the foregoing, West has failed to allege facts sufficient to state an Eighth Amendment claim.

**Denial of Hygiene Items**

West has alleged that he was denied hygiene supplies, showers, and cleaning supplies from October 21 to November 5, 2003. A denial of personal hygiene items will violate the Eighth Amendment only where the denial deprives an inmate of the "minimal civilized measure of life's necessities." *Rhodes,* 452 U.S. at 347. However, conditions that create "temporary inconveniences and discomforts" are insufficient to state an Eighth Amendment claim. *Adams v. Pate*, 445 F.2d 105, 108-09 (7th Cir. 1971).

Recently, United States District Judge Barbara B. Crabb conducted a thorough analysis of this issue in *Cherry v. Berge*, 2005 U.S. Dist. LEXIS 9636 (W.D. Wis. May 17, 2005). In finding that a two-week denial of hygiene supplies to an inmate on BMP did not state an Eighth Amendment claim, Judge Crabb noted that the court of appeals has relied heavily on the length of time that a prisoner was subjected to the allegedly unsanitary conditions. *Id.* Thus, providing one bar of soap, a sample size of toothpaste and no means to launder clothes for eight months, *Sanders*

13

*v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999), and exposure to an infestation of cockroaches and mice for sixteen months, *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996), were sufficient to state an Eighth Amendment claim. However, exposure to a filthy, roach-infested cell without toilet paper for five days and without soap, toothpaste and a toothbrush for ten days, *Harris,* 839 F.2d at 1235, and denial of personal hygiene items such as soap, toothpaste, and deodorant for two weeks, *Lee v. Washington*, 1999 U.S. Dist. LEXIS 14295, No. 97C4710, 1999 WL 759609 (N.D. Ill. 1999)**,** did not reach unconstitutional proportions. Based on the foregoing, West's allegation that he was denied hygiene supplies, showers, and cleaning supplies for approximately two weeks fails to state an Eighth Amendment claim.

## STATE CLAIMS

West has asked this court to "accept supplemental jurisdiction over [his] pendant state tort claims pursuant to 28 U.S.C. § 1367." *Id*. at 2. In particular, he alleges that the defendants violated Wis. Stat. §§ 227.10, 302.08, 810, 895.80, 940.29, 946.12, and 946.73. Courts may exercise supplemental jurisdiction over claims so related to claims in action that they form part of the same case or controversy. 28 U.S.C. 1367(a). However, the Seventh Circuit has held that district courts have the discretion whether to retain or refuse jurisdiction over state law claims. *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 500 (7th Cir. 1999).

In this case, West does not specify how the defendants' actions violated state law. Instead, he simply cites all the above-mentioned statutes at the conclusion of each complaint allegation. This type of pleading fails to provide defendants fair notice of the claims against them. *See Lindell v. Doyle,* No. 02-C-473, U.S. Dist. LEXIS 1571, at *7 (W.D. Wis. Feb. 2, 2004) (stating that failure to make specific allegations against 79 defendants "robs" defendants of notice required under

14

Fed.R.Civ.P. 8). For this reason, the court declines to exercise pendant jurisdiction over his state law claims.

In summary, West may proceed on his Eighth Amendment claim against defendants Haines, Berge, Escandell, Huibregste, and Boughton based on his allegation that he was subjected to freezing temperatures while on BMP. However, the remainder of West's due process claims are dismissed, as are his BMP and retaliation claims.

As a final matter, West has requested appointment of counsel. Although civil litigants do not have a constitutional or statutory right to counsel, this court has the discretion to request attorneys to represent indigents in appropriate cases pursuant to 28 U.S.C. § 1915(e)(1). *Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) (citing *Zarnes v. Rhodes*, 64 F.3d 285, 288 (7th Cir. 1995)). "As a threshold matter, litigants must make a reasonable attempt to secure private counsel." *Zarnes*, 64 F.3d at 288. Once this threshold burden has been met, the court must address the following question: given the difficulty of the case, does this plaintiff appear to be competent to try the case him or herself and, if not, would the presence of counsel likely make a difference in the outcome of the case. *Id.* (citing *Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)). In this case, West has not provided any indication that he has unsuccessfully attempted to obtain legal counsel on his own. He should provide the court with the names and addresses of counsel he has contacted. Moreover, the issues in this case appear at this stage to be straightforward and uncomplicated.[4] For these reasons, West's request for appointment of counsel is denied.

---

[4]Furthermore, the court notes that West is a seasoned litigator. Indeed, he has filed at least eight other actions in this district alone. *See West v. Litscher*, Case No. 02-363; *West v. Haumataki*, Case No. 03-17; *West v. Litscher*, Case No. 03-658; *West v. Overbo*, Case No. 03-658; *West v. Frank*, Case No. 05-1085; *West v. Cole*, Case No. 96-414; *West v. Wrobleski,* Case No. 96-665; *West v. McCaughtry*, Case No. 97-70.

**THEREFORE, IT IS ORDERED** that West may proceed on his Eighth Amendment claim against defendants Haines, Berge, Escandell,Huibregste, and Boughton based on his allegation that he subjected to freezing temperatures while on BMP. The remainder of West's due process claims are dismissed, as are his BMP and retaliation claims against these and all other defendants. The United States Marshal shall serve a copy of the complaint, the summons, and this order upon defendants Haines, Berge, Escandell,Huibregste, and Boughton pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting to make such service. 28 U.S.C. § 1921(b). The current fee for waiver-of-service packages is $8.00 per item. The full fee schedule is provided in 28 C.F.R. § 0.114(a)(2), (a)(3). Even though Congress requires the court to order service by the U.S. Marshals Service when an impoverished person is permitted to proceed in forma pauperis, Congress has not provided for these fees to be waived, either by the court or the U.S. Marshals Service.

**IT IS ALSO ORDERED** that the defendants shall file a responsive pleading to the complaint.

**IT IS ALSO ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

16

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated this   31st   day of May, 2006.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

Case 1:06-cv-00068-WCG   Filed 05/31/06   Page 17 of 17   Document 9