# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RUFUS WEST,

        Plaintiff,

    v.                                  Case No. 06-C-68

JOHN KUSSMAUL, *et al.,*

        Defendants.

## AMENDED[1] DECISION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT

      Plaintiff Rufus West, a state prisoner held at Wisconsin Secure Program Facility (WSPF) at all times relevant, filed this *pro se* civil rights action pursuant to 42 U.S.C. 1983, claiming that correctional officers and staff at WSPF violated his constitutional rights by placing him on a behavior modification plan or program (BMP), which subjected him to cruel and unusual punishment. West further claims that the defendants further violated his rights by placing him on the BMP without notice and an opportunity to be heard, and by retaliating against him for commencing previous lawsuits against WSPF officers and staff. The matter is now before me on the parties' cross-motions for summary judgment and West's motion for appointment of counsel. For the reasons set forth below, both motions for summary judgment will be denied and West's motion for appointment of counsel will be granted.

---

[1] This amended version of the court's previous decision and order omits that portion of the original decision addressing plaintiff's motion for an order requesting a finding that Warden Grams arbitrarily denied him access to the courts. That portion has been removed and refiled as a separate stand-alone order.

**CROSS MOTIONS FOR SUMMARY JUDGMENT**

On March 2, 2006, West filed a § 1983 complaint against seventy-eight correctional officers, supervisors and staff members of Wisconsin Secure Program Facility (WSPF). Although the court discerned eighteen possible claims in plaintiff's thirty-seven-page rambling complaint, it was dismissed on February 13, 2006, for failing to set forth a short and plain statement showing he was entitled to relief as required by Fed. R. Civ. P. 8(a). West was advised, however, that he could re-file an amended complaint within thirty days.

On March 2, 2006, West filed an amended complaint setting forth several claims that were previously identified against twenty-four defendants. The court screened the amended complaint under 28 U.S.C. § 1915A and determined that West's allegations concerning the conditions of his confinement at WSPF stated a claim under the Eighth Amendment. On February 12, 2007, West's motion for reconsideration of the screening order was granted and he was allowed to add First Amendment retaliation and Fourteenth Amendment due process claims.

In sum, the claims on which West has been allowed to proceed are as follows: (1) an Eighth Amendment claim that the defendants, in forcing him to submit to a BMP, subjected him to cruel and unusual punishment; (2) a Fourteenth Amendment claim that the defendants placed him on BMP status without due process; and (3) a First Amendment claim that the defendants retaliated against him for filing lawsuits about WSPF prison officials.

On July 25, 2007, West filed a motion for summary judgment. The defendants filed a cross-motion for summary judgment on October 12, 2007. Both motions are fully briefed and ready for disposition.

2

## A.    Standard of Review

Summary judgment is required "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the

pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

**B.      Preliminary Matters**

At the outset, it should be noted that although West has sued some twenty-four separate individuals, the defendants' motion for summary judgment does not challenge his claims on the ground that the individually named defendants lack the requisite personal involvement to support a claim under § 1983. *See Gentry v. Duckworth*, 65 F.3d 555, 561 ("To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right."). Instead, defendants argue that West's evidence, viewed in the light most favorable to him, is insufficient to support a finding that he suffered a deprivation of rights, regardless of who may have been involved. I will therefore refer to the defendants collectively throughout and make no attempt to distinguish among them, except where necessary to explain the underlying facts.

Secondly, as will be discussed in the following section, West has claimed that he was forced to endure extremely cold temperatures after he was placed on a behavior modification plan or program (BMP). The defendants contend that the temperature in West's cell was between 74.6 and

4

76.4 degrees at all times. In support of their assertion, the defendants have submitted the sworn statement of Samuel A. Nelson, the Superintendent of Buildings and Grounds at WSPF, who states that his affidavit is based on his review of the institution's temperature records.

In considering a motion for summary judgment, the court may consider any materials that would be admissible or usable at trial, including properly authenticated and admissible documents. *Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000). Fed. R. Civ. P. 56(e) provides that an affidavit may be considered at summary judgment if it is made on personal knowledge, would be admissible at trial, and shows that the affiant is competent to testify to the matters therein. Rule 56(e) also "requires that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit." *Scott v. Edinburg*, 346 F.3d 752, 760 n.7 (7th Cir. 2003)(citing 10A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2272 at 379-380 & 382-84 (1984)).

In this case, the defendants rely entirely on the affidavit of Samuel Nelson to prove that the temperatures in West's cell were between 74.6 and 76.4 degrees. However, Nelson failed to submit with his affidavit a copy of WSPF's temperature records, which serves as the basis for his testimony. Inasmuch as the evidence the defendants have submitted regarding West's cell temperature fails to comply with Rule 56(e), it is inadmissible at summary judgment.

Next, West has been permitted to proceed on three constitutional claims. However, he has only moved for summary judgment as to his Eighth Amendment conditions of confinement claim and his Fourteenth Amendment due process claim. Therefore, the court construes West's motion as one for partial summary judgment.

5

**C.     Analysis**

West argues that he is entitled to summary judgment as to his Eighth Amendment claim because the conditions of BMP constituted cruel and unusual punishment. Additionally, he submits that the defendants violated his rights under the Fourteenth Amendment when they placed him on BMP status without due process and retaliated against him in violation of his First Amendment rights for bringing previous lawsuits.

In response, the defendants aver that there is no genuine issue of material fact with respect to West's First, Eighth or Fourteenth Amendment claims. They further contend that they are entitled to qualified immunity.

**1. Eighth Amendment Claim**

West alleges that the defendants, who are all employees of the Wisconsin Department of Corrections (DOC), violated his Eighth Amendment rights by exposing him to extremely cold temperatures, denying him clothing and blankets, denying him a mattress, denying him hygiene items and showers, and denying him adequate medical and dental care while he was on BMP. (Amend. Compl. at 7). On October 21, 2003, West was placed on BMP after receiving hundreds of Behavioral Incident Forms and Conduct Reports for violating an institution rule requiring him to sleep on his bed. (Ray Aff. ¶ 12).[2]

On that date, defendants Patton, Hunt and Eggers woke West, took him to a strip cage, performed a strip-search and then returned him to his cell that had been cleared of every movable

_____

[2] Although the validity of the infractions are in dispute, the parties agree that they stemmed from West's laying and sleeping on the floor. *Id.*

6

item.  (Amend. Compl. at 8).  West's cell was empty except for a concrete slab for a bed, a toilet and a sink.  *Id.*  The only clothing West was permitted to possess was one pair of underwear.  *Id.*

Pursuant to Condition A of the BMP, West was allowed to possess the following items: (1) a seg smock mattress; (2) a pair of briefs; (3) a blanket from 10:00 p.m. to 8:00 a.m.; and (4) toilet paper as needed.  (Pl.s' Ex. 1).  He was not to be allowed canteen or visitation privileges, nor could he receive mail or possess clippers, razors or cleaning supplies.  *Id.*  In the event that West remained at Condition A for more than three days, he was to receive a shower and clean undergarments on the fourth day.  *Id.*  West's meals were to be served on styrofoam trays and he was allowed legal access on a case by case basis to be determined by the unit manager.  *Id.*

While on Condition B, the following conditions were to apply: (1) West could receive meals on a regular tray; (2) he could take unit-scheduled showers; (3) he was given a smock; (4) he was permitted to have personal hygiene items, such as soap, a toothbrush, toothpaste, a towel and a toilet paper roll.  *Id.*  However, he would still be denied canteen, phone and visitation privileges.  *Id.*  During this phase of the BMP, West could receive mail and his access to legal materials was determined on a case by case basis.  *Id.*

The Eighth Amendment proscribes cruel and unusual punishment which is not part of the formal penalty for a crime if a plaintiff demonstrates: (1) a "sufficiently serious" deprivation, and (2) that officials acted with a "sufficiently culpable state of mind."  *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). To prevail on his Eighth Amendment claim, West must show that BMP imposed conditions which denied him "the minimal civilized measure of life's necessities."  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Additionally, he must demonstrate that the defendants knew

7

that he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

West avers that prison officials did not follow the procedures set forth in the BMP form because he was denied various personal items and he was subjected to extremely cold temperatures. (See*., e.g.,* Pl.'s Aff. of Jul. 25, 2007 [Pl.'s Aff.] ¶¶ 32; 38). By order dated February 12, 2007, West was permitted to proceed on an Eighth Amendment claim based on the entirety of the adverse conditions of confinement while he was on BMP. Therefore, the court will now examine the totality of West's conditions of confinement to determine whether he was exposed to a "sufficiently serious" deprivation, and whether the defendants acted with a "sufficiently culpable state of mind." *Wilson,* 501 U.S. at 299.

### Conditions of Confinement

First, West alleges that while he was on BMP he was subjected to extremely cold temperatures. The Eighth Amendment imposes a duty on prison officials to provide adequate shelter, although conditions may be harsh and uncomfortable. *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997). This right includes a right to protection from extreme cold. *Farmer*, 511 U.S. at 833-34. "Courts should examine several factors in assessing claims based on low cell temperature, such as the severity of the cold; its duration, whether the prisoner has alternative means to protect himself from the cold; the adequacy of such alternatives; as well as whether he must endure other uncomfortable conditions as well as cold. *Dixon,* 114 F.3d at 644. "Cold temperatures need not imminently threaten inmates' health to violate the Eighth Amendment." *Id.*

West has supported his cold cell temperature claim with his own affidavit which attests that the temperature in his cell was kept between 39.7 and 66.8 degrees. (Pl.'s Resp. to Def.'s Prop.

8

Find. of Fact ¶ 196). Defendants properly object that he offers no foundation for such precise temperature readings, but that does not mean I should disregard his evidence entirely. There certainly exists sufficient foundation for West to offer an estimate of the temperature in his own cell, which would be admissible under Fed. R. Evid. 701.[3] In any event, he states that he had to bundle up in a corner to stay warm and he had difficulty sleeping because it was so cold in his cell. (Pl.'s Aff. ¶¶ 30-32). West has also submitted the affidavits of twelve other WSPF inmates who aver that one pair of underwear and a blanket were insufficient to keep an inmate warm during October and November, 2003.[4] The defendants dispute West's claim and aver that the temperature in his cell was never lower than 74.6 degrees. (Nelson Aff. ¶ 6). As noted above, however, the affidavit setting forth this fact does not comply with Rule 56(e). West also notes that, in a previous case involving the facility at Boscobel, the United States District Court for the Western District of Wisconsin had previously found that "[t]he temperature fluctuates wildly, reaching extremely high and low temperatures depending on the season." *Jones-El v. Berge*, 164 F. Supp. 2d 1096, 1098 (W.D. Wis. 2001). I conclude that the evidence is sufficient to create a factual issue not capable of resolution on summary judgment.

Because the Eighth Amendment draws its meaning from the evolving standards of decency in a maturing society, there is no fixed standard to determine whether conditions are cruel and unusual. *Rhodes*, 452 U.S. at 346. However, in at least two cases from this circuit, an inmate's

---

[3] Defendants also note that West's claim that his cell was cold is inconsistent with his claim that he needed to lie on the cell floor instead of in his bed as the guards insisted because his cell was so hot. While this argument may call into question West's credibility, it does not defeat his claim. He complained of the heat in June and the summer months. The BMP was commenced in October.

[4] *See* Affidavits of Anthony Caliph Stevens-El, Leon Irby, Al-Almin Akbar, Thomas E. Deering, Michael Hughes, Eugene Cherry, Berrell Freeman, Rodosvaldo C. Pozo, Shirell Watkins, Sr., Eric Gomez, Alphoncy Dangerfield, Sr. and Glenn T. Turner.

9

allegation that he was exposed to extreme cold and denied adequate clothing was found to preclude entry of summary judgment in prison officials' favor.  *See Dixon*, 114 F.3d at 642 (allegations that cell was so cold that ice formed on walls of inmate's cell and inmate could see his own breath precluded entry of summary judgment); *Del Raine v. Williford*, 32 F.3d 1024, 1031, 1034 (7th Cir. 1004)(allegations that the inmate was placed naked in a bare cell with a broken window when the wind chill was forty degrees below zero precluded entry of summary judgment).

These cases, to be sure, appear to present more extreme conditions than West alleges here. But West's Eighth Amendment claim is based not on isolated conditions, but on the totality of the circumstances.  To this extent, the United States Supreme Court has recognized that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have the mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth or exercise - for example, a low cell temperature at night combined with a failure to issue blankets."  *Wilson*, 111 S. Ct. at 2327.  Thus, in cases where an Eighth Amendment violation was found, the prisoner was exposed to cold in conjunction with other serious problems.  *See, e.g., Antonelli*, 81 F.3d at 1431-33(cold, excessive force, pest infestation); *Kimbrough v. O'Neil*, 523 F.2d 1057 (7th Cir. 1973)(cold and no personal hygiene items); *Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980)(cold, defective plumbing, excessive mold and fungus and pest infestation).  For these reasons, the relevant inquiry is whether the remaining conditions of West's confinement, in combination with the alleged cold cell temperature, deprived him of a "the minimal civilized measure of life's necessities."  *Rhodes,* 452 U.S. at 347.

Here, West also claims that he was denied toilet paper from October 21 to November 5, 2003, or sixteen days.  He alleges that he was denied showers for the entirety of BMP  (See Pl.'s

10

Aff. ¶¶ 24; PFOF ¶¶ 17, 23-24), as well as hygiene items such as soap, toothpaste and a toothbrush for the sixteen days he was on BMP. (Pl.'s Aff. ¶ 36). While the defendants claim that West was provided toilet paper upon request, and was allowed to shower and given hygiene items after the third day on BMP, these factual disputes between the parties, like the cell temperature, are not ones that can be resolved on summary judgment. Viewing the evidence, as I must, in the light most favorable to the nonmoving party, I must assume that West was denied toilet paper as he claims and was forced to use his hand to clean himself and then wash in the sink. (West Aff. ¶ 36.) I also assume for purposes of the present motions that West was denied showers and hygiene items the entire length of his BMP.

On top of the foregoing, West claims that he was denied a mattress for the entire time he was on BMP. (See Pl.'s Aff. ¶¶ 23, 80, 177, 34; PFOF ¶¶ 17, 23-24). He also submits that his blanket was taken on the ninth day of BMP. (Pl.s' Aff. ¶ 38). West describes the effects of these conditions as follows:

> As a result of the freezing cell temperatures I endured from 10-21-03 to 11-11-03 [with] no adequate means or means at all to protect myself from said temperatures, I suffered from loss of sleep, i.e., only a total of 2 hours a day in piecemeal because I kept waking up from my body constantly shaking & shivering from said cold laying on said concrete. . . . I also suffered via constantly freezing, cold sweats, unstoppable said shakes and shivering, stuffy & runny nose, coughing, sneezing, the constant belief that I'm being frozen to death, hearing my cellie, major depression & suicidal thoughts.

(West Aff. ¶ 32.)

Determining whether the conditions of an inmate's confinement violate his Eighth Amendment right not to be subjected to cruel and unusual punishment "requires a "fact-intensive inquiry under constitutional standards.'" *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006) (quoting *Chandler v. Baird*, 926 F.2d 1057, 1064 (11th Cir.1991)). In *Gillis*, the Seventh Circuit

11

reversed this court's summary judgment dismissing a claim by an inmate at WSPF who had been placed on a similar BMP. It is true that the conditions there were harsher than those alleged by West here. For instance, unlike West, Gillis was deprived of all of his clothing in the first stage of the BMP, even his underwear. In addition, he was fed nothing but nutri-loaf, which the Court described as "basically a ground-up block of food," *id.* at 491, and "deprived of nearly all human contact and sensory stimuli." *Id.* at 490. On the other hand, Gillis was given some toilet paper-"four squares-only a few times," *id*. at 489, whereas West claims to have been given none. And while Gillis was denied a blanket during the first stage, even at night, West claims his "flimsy blanket" was taken away because "I'd cover myself up to try to get warm." (West Aff. ¶ 38.)

Taken as a whole, the conditions to which West claims he was subjected while on BMP are too similar to those that the Court in *Gillis* found sufficient to warrant a trial to allow summary judgment here. *Chandler*, the very case cited by the Court as support for its ruling in *Gillis*, provides strong support for this conclusion.

> In *Chandler*, the inmate was confined in a cell with no clothing except undershorts and with a plastic-covered mattress without bedding. The temperature in the cell was alleged to be as low as 60 degrees. The inmate contended that he sometimes slept huddled with a roommate, sleeping between two mattresses. The prison officials disagreed, saying that the cell was controlled by the same thermostat that controlled areas of the prison occupied by nurses and no one else complained about the temperature. They acknowledged, however, that the other people in these areas were fully clothed. The inmate also received no toilet paper for 3 days. The Chandler court vacated a grant of summary judgment for the prison officials and sent the case back to the district court for trial.

*Gillis*, 468 F.3d at 493. If summary judgment was not appropriate in *Chandler*, it would certainly be inappropriate here.

This is not to say that the conditions alleged by West created a significant threat to his physical safety. That is certainly one thing the defendants appeared concerned about. The reason

12

they placed him on a BMP in the first place, they claim, was to get him to comply with a rule intended for his own safety. The rule requiring the inmate to sleep on his bed in the proper position is to insure that when security staff make their rounds at night, "they are able to have a clear view of the inmate, especially the head and upper body, to ensure that the inmate is breathing and safe." (Haines Aff. ¶ 24.) In the past, inmates have been able to commit suicide or seriously harm themselves, or suffered other kinds of health emergencies resulting in a loss of consciousness. Requiring that inmates remain in clear view at night so that the security staff can identify such problems, according to the defendants, is necessary to insure inmate safety. (Haines Aff. ¶¶ 84-85.) West was placed on the BMP supposedly because he continued to violate this rule.

And in attempting to coerce West into complying with the rule, the prison staff did not subject him to conditions intended or likely to cause lasting physical injury. No one beat him, and there is no allegation that he was denied food and water. Instead, the BMP deprived him of items so as to make him uncomfortable. But the Eighth Amendment does not proscribe only those conditions of confinement that are likely to cause death or serious injury. It also proscribes conditions that "involve the wanton and unnecessary infliction of pain," including "pain without any penological purpose." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Even more importantly, the Eighth Amendment protects the basic dignity of the person being punished. *See Trop v. Dulles*, 356 U.S. 86, 100 (1958) ("The basic concept underlying the Eighth Amendment is nothing less than the dignity of man."); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002) ("The use of the hitching post under these circumstances violated the 'basic concept underlying the Eighth Amendment[, which] is nothing less than the dignity of man.'") (quoting *Trop*, 356 U.S. at 100.). It prohibits treatment that robs the inmate of his innate dignity as a human being.

13

Here, the facts taken in the light most favorable to West would allow a jury to conclude that the conditions he was subjected to under the BMP violated his Eighth Amendment rights. There is no doubt that "[a] lack of heat, clothing, or sanitation can violate the Eighth Amendment." *Gillis*, 468 F.3d at 493 (citing *Lewis v. Lane*, 816 F.2d 1165 (7th Cir.1987)). Whether the discomfort suffered by West over the 16-day period he was denied outer clothing or a blanket amounts to cruel and unusual punishment is for a jury to decide. And while the fact that West was allowed underwear certainly suggests that he was allowed to retain more of his dignity than Gillis, the alleged denial of toilet paper, when considered with the totality of circumstances, could also support a finding that his rights were violated. Forcing a man to clean himself with his hands after he defecates is a denial of human dignity proscribed by the Eighth Amendment. "The restraints and the punishment which a criminal conviction entails do not place the citizen beyond the ethical tradition that accords respect to the dignity and intrinsic worth of every individual." *United States ex rel. Miller v. Twomey*, 479 F.2d 701, 712 (7th Cir. 1973).

### Denial of Medical Care

West also claims that he was not provided adequate medical and dental care during BMP. (Pl.s' Aff. ¶¶32, 33 & 36). Specifically, he alleges that he suffered from constant pain in his legs, hips and back and that his teeth became loose, swollen and bled. *Id.* Deliberate indifference to the serious medical and dental needs of prisoners constitutes the unnecessary and wanton infliction of pain, and thus is proscribed by the Eighth Amendment, *Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *Board v. Farnham*,394 F.3d 469 (7th Cir. 2005)(a dental condition may constitute a serious medical need and, therefore, denial of dental care may violate the Eighth Amendment). To establish liability under the Eighth

14

Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer,* 511 U.S. at 834; *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

The record demonstrates that West was provided with medical care on several occasions. On October 24, 2003, he saw nurse Hartman, to whom he complained that his cell was cold. (Pl.'s Aff. ¶ 22). Hartman observed that West, who was wearing a segregation smock, was bearing weight on both legs, had no swelling or bruising and demonstrated full range of motion in both legs. (Pl.'s Ex. 2 at 3).

On October 27, 2003, West was seen at his cell nurse Chapman, to whom he complained that he did not have the personal property that he needed. (Pl.'s Ex. 2 at 4). Campbell informed him that he was only allowed to have his mattress and pillows at night. *Id.* West also complained that he did not have enough pain medication and Campbell stated that she would check his medications. *Id.*

On October 29, 2003, West saw nurse Waterman, to whom he complained that he was experiencing hemorrhoidal bleeding, exposure to freezing temperatures, cold sweats, shakes, a stuffy and runny nose, sneezing, coughing, inability to sleep and lack of eyeglasses. (Waterman Aff. ¶ 6). Waterman advised him that she would schedule him to see the doctor the next day. *Id.*

On October 31, 2003, West again saw nurse Waterman. (Waterman Aff. ¶ 9). On that date, he reiterated the complaints he previously made on October 29. *Id.* Waterman informed him that his request for eyeglasses had been previously addressed. *Id.* On November 1, 2003, Waterman reported West's concerns about his loose teeth to the WSPF dentist. (Waterman Aff. ¶ 11).

15

Finally, on November 3, 2003, West prepared a Health Services Request form complaining that he was suffering from hemorrhoidal bleeding, exposure to freezing temperatures, cold sweats, shakes, a stuffy and runny nose, sneezing, coughing, an inability to sleep and lack of eyeglasses. (Waterman Aff. ¶ 13). That same day, Waterman went to his cell and observed no coughing, sneezing, nasal congestion, body pain or guarding of body movements. (Waterman Aff. ¶ 14). West complained about his hemorrhoids and was offered analgesics, which he refused because he was on Ramadan. (Pl.s' Ex. 2 at 6). Waterman advised West that his medication would be on the cart and he should request it if needed. *Id.*

In light of the foregoing, the court is not persuaded that the medical and dental conditions from which West suffered constitute a serious medical need. *See Farmer,* 511 U.S. at 834. Moreover, I can discern no basis for his claim that prison officials were deliberately indifferent to any of his medical and dental needs. *See id.* As the defendants also point out, if West was under the care of medical personnel (such as nurses Hartman, Campbell and Waterman) a non-medical prison official such as the defendants will generally be justified in believing that the prisoner is in capable hands. *See Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Furthermore, West failed to name any of the nurses as defendants in this case and it is unclear who is included in the term "staff." An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *Sheik-Abdi v. McClellan*, 37 F.3d 1240, 1248 (7th Cir. 1994); *Rascon v. Hardiman*, 803 F.2d 269, 273 (7th Cir. 1986). And, to the extent West seeks to hold the defendants liable for the actions of nurses Hartman, Campbell and Waterman and "staff," § 1983 does not create a claim based on collective or vicarious responsibility. *See Pacelli v. deVito*, 972

16

F.2d 871, 875 (7th Cir. 1992). Accordingly, Wests claim will be dismissed to the extent it is based on the denial of medical care.

### 2. Due Process Claim

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). To establish a procedural due process violation, a prisoner must first demonstrate that the state deprived him of a liberty or property interest created by state law or the Due Process Clause itself. *See Sandin v. Connor*, 515 U.S. 472, 483-84 (1995). The state has no constitutional obligation to provide an inmate any procedural protection unless it deprives him of a liberty interest. And the mere fact that West was put on BMP does not mean he was deprived of a liberty interest, *see Lagerstrom v. Kingston*, 463 F.3d 621 (7th Cir. 2006), because a prisoner has no liberty interest in remaining in the general prison population. *Hewitt v. Helms*, 459 U.S. 460, 467-68 (1983). Only if the conditions of his confinement impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, will a liberty interest sufficient to trigger procedural protections of the Due Process Clause be found.

It necessarily follows from the discussion of West's Eighth Amendment claim above that there is sufficient evidence from which a jury could conclude that West was deprived of a Fourteenth Amendment liberty interest when he was placed on the BMP. A jury could conclude that the program imposes an atypical and significant hardship even measured against the ordinary incidents of life at WSPF. The defendants contend, however, that even if the conditions under the BMP do amount to "atypical and significant hardship," West's Fourteenth Amendment claim

17

nevertheless fails because he received adequate notice and the opportunity for a hearing. They claim that West was put on notice of the BMP and the conditions that would be imposed when he was given an opportunity to sign the form that instituted it. He also had the opportunity to a hearing on the plan through the Inmate Complaint Review System (ICRS). *See* Wis. Adm. Code § DOC ch. 310. (Def.'s Br. In Supp. Summ. J. at 16.)

The defendants' argument is unconvincing. First, West denies he was given the form notifying him of the BMP or the reasons for it. (West Aff. ¶ 16.) But even if he had been given the form, it would not have satisfied the procedural due process requirements of the Fourteenth Amendment. The defendants cite *Wilkinson v. Austin* as support for their contention that the ICRS would provide sufficient safeguards to insure due process. *Wilkinson* held that while Ohio inmates had a liberty interest in avoiding transfer to that State's supermax prison, Ohio's informal, nonadversary procedures for placement of an inmate in its supermax were constitutionally adequate to safeguard that interest. But Ohio provided multiple levels of review for any decision recommending supermax placement, with power to overturn the recommendation at each level. In addition, Ohio reduced the risk of erroneous placement by providing for a placement review within 30 days of an inmate's initial assignment to supermax. *Id.* at 227. West was offered no safeguards here. He was simply placed in the BMP without notice or an opportunity to be heard. Under these circumstances, I conclude that his due process claim survives along with his Eighth Amendment claim.

**3. Retaliation Claim**

West alleges that the defendants retaliated against him for filing lawsuits about WSPF prison officials in the following ways: (1) in May, 2002, he was given a seg mat as punishment for laying

18

on the floor; (2) on May 31, 2003, his toilet was repeatedly flushed after he laid on the floor to escape the heat of his cell; (3) from June 1 to November 1, 2003, his cell light was turned on when he laid on his cell floor; (4) from May 29 to December 2, 3003, warnings were written in his behavior log when he laid on his cell floor; (5) from June 1, 2003, to January 7, 2004, he was given conduct reports for laying on the floor; and (6) from June 6, 2003, to January 16, 2004, he was placed on a no mattress restriction. (Amend. Compl. at 3-7).

Prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). To establish retaliation at the summary judgment stage, West must demonstrate: 1) a chronology of events from which retaliation could be inferred; and 2) that retaliation was a motivating factor behind the defendants' conduct. *Babcock*, 102 F.3d at 276. Retaliatory motive may be inferred from the chronology of events. *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987). However, at the summary judgment stage, West must submit evidence that his grievances were "a substantial or motivating factor" in the prison official's conduct. *Brookins v. Kolb*, 990 F.2d 308, 315 (7th Cir. 1993); *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987).

The retaliation inquiry should be undertaken "in light of the 'general tenor' of *Sandin*, which 'specifically expressed its disapproval of excessive judicial involvement in day-to-day prison management.'" *Babcock*, 102 F.3d at 275 (quoting *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Thus, courts should "afford appropriate deference and flexibility" to prison officials in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory. *Babcock*, 102 F.3d at 275.

To establish that retaliation was the motivating factor behind the defendants' actions, West must show that "had it not been for the violation, the injury of which he complains would not have occurred[.]" *Rakovich v. Wade*, 850 F.2d 1180, 1189 (7th Cir. 1988). Speculation based on suspicious timing alone does not support a reasonable inference of retaliation. *Burks v. Wis. Dep't of Transp.*, 464 F.3d 744 (7th Cir. 2006)(quoting *Sauzek v. Exxon Coal USA, Inc.,* 202 F.3d 913, 918 (7th Cir. 2000)).

West asserts that the defendants retaliated against him for filing the following state and federal lawsuits: (1) *West v. Litscher*, No. 02-C-0363 (E.D. Wis.); (2) *West v. Overbo*, No. 03-C-0658 (E.D. Wis.); (3) *West v. Boland*, No. 02-C-0313 (W.D. Wis.); *West v. Berge*, Dane County Circuit Court Case Number 03-2292; and (5) *West v. Berge*, Dane County Circuit Court Case Number 02-3538.[5] West alleges that because the claims in the above-named cases concerned wrongdoing by WSPF officials, the defendants in this case were motivated to retaliate against him. (Amend. Compl. at 5-6).

The defendants argue that West's retaliation claim fails because West admits he was sleeping on his floor and "[i]t is undisputed that at WSPF, all inmates are required to sleep on their mattress, which is to be placed on top of the bed." (Def.'s Br. In Supp. of Summ. J. at 20.) Since by West's own admission, the conduct complained of was taken in response to his rule violation, defendants contend that there is no basis for an inference that the defendants were retaliating against West for protected conduct. In other words, West cannot show that "had it not been for the violation, the injury of which he complains would not have occurred." (Def.'s Br. In Supp. at 21 (quoting *Rakovich v. Wade*, 850 F.2d 1180, 1189 (7th Cir. 1988)).

---

[5] West has identified another case as the basis for his retaliation claim, Dane County Circuit Court Case Number 02-3383. However, the court can find no record of this case.

The difficulty with the defendants' argument, however, is that the claim that all inmates at WSPF were required to sleep in their beds is in dispute. West claims that he was told by defendant Haines that inmates could sleep on their floors and, in addition, he offers evidence that other inmates were told the same. Inmate Presley Hubanks states that he heard Defendant Haines, Echo Unit Manager, tell West and other inmates, including himself, that they could sleep on the floor. (Decl. of Presley Hubanks, ¶ 3.) Inmate Steven Stewart confirms he heard Haines say the same thing, and states that he personally regularly slept on the floor from 1999 through 2005 without ever being told he was breaking a rule. (Decl. of Steven D. Stewart ¶¶ 2-3.) Inmate Allen Davis makes the same claim. (Decl. of Allen Tony Davis, ¶ 3.) If a jury finds from this evidence that West was singled out for punishment for conduct that he and other inmates were told was permitted and which other inmates regularly engaged in without any consequences, it could infer that West did suffer retaliation. It therefore follows that this claim also survives defendants' motion for summary judgment.

### 4. Qualified Immunity

Finally, defendants contend that even if the court declines to grant summary judgment on the ground that the undisputed facts demonstrate that West was not deprived of any constitutional rights, summary judgment should nevertheless be granted because they are entitled to good faith immunity. The qualified immunity defense "gives public officials the benefit of legal doubts" when making official decisions. *Elliot v. Thomas*, 937 F.2d 338, 341 (7th Cir. 1991), *cert. denied sub nom. Propst v. Weir*, 502 U.S. 1074 (1992). Under this doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Defendants argue

21

that, even if they are found to have violated West's constitutional rights, they are entitled to qualified immunity because the violations they allegedly committed were not clearly established. (Def.'s Br. In Supp. of Summ. J. at 24.)

This argument fails, however, because the law concerning the claims West has asserted was clearly established in October 2003. It is true that I have in part relied on the Seventh Circuit's decision in *Gillis v. Litscher* in upholding West's Eighth Amendment claim and that Gillis was decided after the events giving rise to this case occurred. But while *Gillis* postdates the events of this case, the Court made clear in *Gillis* that it was not breaking new ground. The cases on which it relied predate this case by years. The same is true of West's due process and retaliation claims. *Sandin v. O'Connor* was decided in 1995, and the law governing retaliation claims is similarly well-established. I therefore conclude that defendants are not entitled to summary judgment on the ground of qualified immunity. A jury, it appears, will be needed to resolve the case.

In sum, I conclude that there are factual disputes the preclude entry of summary judgment in favor of the either party. Both motions are therefore denied.

## PLAINTIFF'S MOTION TO APPOINT COUNSEL

On December 21, 2007, West filed a motion for appointment of counsel. As grounds for his request, West states: (1) he is unable to afford an attorney; (2) he is unfamiliar with jury trial procedures; and (3) he has attempted to settle this case, but the defendants have refused; (4) he intends to call dozens of witnesses who are spread throughout the prison system; and (5) he is in punitive segregation. Although I had previously denied West's motion, I did so without prejudice. The case is now in a different posture and the issue warrants reconsideration.

22

Indigent civil litigants, of course, have no absolute constitutional or statutory right to be represented by counsel in federal court. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992). This court is authorized to request, but not to compel, an attorney to represent an indigent civil litigant pursuant to 28 U.S.C. § 1915(e)(1). "When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007)(rehearing en banc)(citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). If the plaintiff has made no effort to secure counsel, the motion must ordinarily be denied outright. *Jackson*, 953 F.2d at 1073.

In this case, West has satisfied the threshold inquiry and indicated that he has contacted several attorneys who have declined to represent him in this matter. Having concluded that the case cannot be disposed of on summary judgment, and given the limitations imposed by West's confinement, I conclude that this is an appropriate case to appoint counsel. West's motion will therefore be granted. The Court, through the Office of the Clerk, will attempt to locate counsel willing to assist West in presenting his case. Once counsel is appointed, the court will contact the parties for further scheduling.

**THEREFORE, IT IS ORDERED** that the plaintiff's motion for partial summary judgment (Docket # 84) is **DENIED.**

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (Docket # 108) is also **DENIED.**

23

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket # 121) is **GRANTED.**

Dated this ___1st___ day of April, 2008.

 s/ William C. Griesbach
William C. Griesbach
United States District Judge
